UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES<br><br>v.<br><br>MANDEL BIDONE | No. 3:23-cr-111 (SRU) |

### ORDER ON RENEWED MOTION FOR A COMPETENCY FINDING

The defendant in this case, Mandel Bidone, is charged with one count of mailing an extortionate communication, in violation of 18 U.S.C. § 876(b). *See* Indictment, Doc. No. 19. On September 1, 2023, Bidone's former attorney moved for a competency examination of Bidone pursuant to 18 U.S.C. § 4241(a). Doc. No. 25. Counsel again filed a motion for a competency evaluation on July 19, 2024. Doc. No. 62. I appointed Dr. Madelon Baranoski to perform a competency examination of Bidone on August 6, 2024. Doc. No. 73. Dr. Baranoski's competency evaluation report was filed on September 5, 2024. Doc. No. 76. On April 23, 2025, I held a competency hearing, at which I denied the motion and found Bidone competent to stand trial. *See* Minute Entry, Doc. No. 100. After a colloquy about his case, I found that Bidone was aware of the nature of the charge against him and the consequences of being found guilty, and that he is capable of assisting a lawyer in defending against the charge. *See* Transcript, Doc. No. 114, at 60:11-24.

I conducted jury selection on August 4, 2025, and trial is set to begin August 12, 2025. On August 6, 2025, the government filed the instant motion, requesting that I reconsider my prior order and declare Bidone incompetent to stand trial. Doc. No. 162.

I.      **Legal Standard**

The Due Process Clause of the United States Constitution secures the right of an incompetent defendant not to stand trial. *See United States v. Kerr*, 752 F.3d 206, 215 (2d Cir. 2014). That constitutional right is further "safeguarded by 18 U.S.C. § 4241, which requires the district court, upon its own motion if necessary, to hold a competency hearing 'if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense.'" *Id.* (quoting 18 U.S.C. § 4241(a)).[1]

Competency must be established by a preponderance of the evidence. *See* 18 U.S.C. § 4241(d). Courts apply a two-pronged test to assess whether a defendant is competent to stand trial. First, a court must determine "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding." *Dusky v. United States*, 362 U.S. 402, 402 (1960). Next, the court must determine "whether [the defendant] has a rational as well as factual understanding of the proceedings against him." *Id.* "In making a determination of competency, the district court may rely on a number of factors, including medical opinion and the court's observation of the defendant's comportment." *United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995).

---

[1] The full text of 18 U.S.C. § 4241(a) reads: "At any time after the commencement of a prosecution for an offense and prior to the sentencing of the defendant, or at any time after the commencement of probation or supervised release and prior to the completion of the sentence, the defendant or the attorney for the Government may file a motion for a hearing to determine the mental competency of the defendant. The court shall grant the motion, or shall order such a hearing on its own motion, if there is reasonable cause to believe that the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense."

**II.    Discussion**

The government, in its motion, argues that Bidone's mental state appears to have deteriorated since the April 23rd hearing at which I found Bidone competent to stand trial, warranting my now finding him incompetent. *See* Doc. No. 162. I disagree. In fact, based on my observation of the defendant's comportment, I believe that he has shown improvement in his in-court demeanor since the April hearing.

The government is correct that, at the time of the April hearing, I was concerned about Bidone's ability to focus. At jury selection on August 4th, however, Bidone appeared quite focused and composed. I observed him diligently taking notes throughout selection and consulting with his attorneys at appropriate times.

The government points to Bidone's decision to wear his prison jumpsuit during jury selection, rather than change into plain clothes, as evidence of his inability to assist in his defense. *See id.* at 7. I discussed that decision with Bidone briefly on the record, however, and interpreted his decision as a conscious attempt to make a statement to the jury, not as evidence of his incompetence. The government also points to Bidone's waiver of six of his peremptory challenges as evidence of his incompetence. *See id.* at 7-8. That decision, however, had the effect of striking the potential jurors with the highest juror numbers. It may very well have been Bidone's intention to do exactly that. The government has followed the same course, not infrequently, in other cases.

I also disagree with the government's characterization of Bidone's *pro se* filing, submitted after jury selection, which the government argues is also evidence of Bidone's incompetence. *See id.* at 8; Mot. for Jury Instruction, Doc. No. 158. Though the filing, titled

"Motion for Jury Instruction," makes some arguments that are not entirely consistent with any defense that I anticipate will be presented at trial, it is carefully researched and quite impressive for a *pro se* filing. The motion summarizes and responds to complex legal arguments made by the attorneys in previous filings, highlights many of the key issues that will be litigated at trial, and compiles a great deal of on-point caselaw. To the extent that Bidone's filing is evidence of a "commitment to his own particular strategy of defense" not being pursued by his attorneys, that "does not mean that he lacks the *ability* to assist his attorney[s]." *United States v. Lyttle*, 2009 WL 2390608, at *6 (W.D.N.Y. July 31, 2009), *aff'd*, 455 F. App'x 61 (2d Cir. 2012) (emphasis added).

I recognize that Dr. Baranoski, in her competency evaluation, observed that Bidone has paranoid thinking and tangential speech. *See* Competency Evaluation Report, Doc. No. 76. However, Dr. Baranoski also observed that Bidone had a basic factual understanding of the charge he faces and the proceedings against him. *Id.* at 3. Moreover, I concluded at the April 23rd hearing and still believe today that Dr. Baranoski's observations regarding Bidone's mental health do not support a conclusion that he is incompetent to stand trial. In fact, since the April 23rd hearing Bidone has new counsel, and neither Bidone nor his attorneys have complained about an inability to communicate effectively with each other.[2] As I noted earlier, I observed

---

[2] I note that the government's motion, in its summary of the April 23, 2025 competency hearing, incorrectly identifies Bidone's then-attorney as Assistant Federal Defender Josh Ewing, who was only appointed after that competency hearing. *See* Doc. No. 162, at 5-6. At the time of the competency hearing, Bidone was represented by Assistant Federal Defender Daniel Erwin. That fact is important because, as the government points out, Bidone expressed at that hearing his strong dissatisfaction with his attorney. *Id.* Since appointing Attorney Ewing to represent Bidone, I have not been made aware of any issues with the attorney-client relationship. In early June, Assistant Federal Defender Anne Silver also entered an appearance for Bidone. *See* Doc. No. 139. The *pro se* filing Bidone made following jury selection suggests that Bidone respects her work on his behalf.

4

Bidone consulting with his attorneys in what appeared to be a very productive manner during jury selection. I therefore conclude that Bidone has the ability to consult with his lawyer with a reasonable degree of rational understanding.

Finally, the government's motion implicitly suggests that Bidone's recent *pro se* filings demonstrate that he is a danger to the public. *See* Doc. No. 162, at 8 ("Bidone appears to be doubling down on his belief that committing a mass shooting at Yale's campus is justified."). Even if that is true, a finding of incompetence and the competency restoration process would do nothing to make Bidone less of a danger. If Bidone suffers from mental health issues, those issues do not affect his competence—the only issue I have been asked to determine. Any such mental health issues and any resulting dangerousness would have to be addressed in other ways. The effect of finding Bidone incompetent would only be a delay of his trial without any benefit to the public or to Bidone.

### III.  Conclusion

For the reasons stated above, the government's motion for a competency finding, doc. no. 162, is **denied**.

So ordered.

Dated at Bridgeport, Connecticut, this 8th day of August 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge